# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**KELVIN L. CRENSHAW,**
        Petitioner,

v.                                                   Case No. 13-C-1313

**BOB HUMPHREYS, Warden,**
**Kettle Moraine Correctional Institution,**
        Respondent.

---

## DECISION AND ORDER

In this decision and order, I address Kelvin Crenshaw's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

The Wisconsin Court of Appeals stated the facts of this case as follows:

> Karl Peterson testified that on June 1, 2008, he was outside walking two puppies, a boxer and a pit bull, when he was passed by an individual riding a bicycle. The next thing Peterson knew, a man, later identified as Crenshaw, walked up to him, stuck a gun in his face, and shouted: "hey, mother fucker, give it up, old school." Peterson scrambled in an effort to give Crenshaw what he wanted when Crenshaw shot him twice—once in the chest and once in the bicep. Peterson then struggled with Crenshaw and successfully grabbed the gun away from him. Immediately after Peterson wrestled the gun away from Crenshaw, the police arrived, and gave Peterson medical attention. Peterson recalled that the robber was wearing a black hooded sweatshirt and orange shoes.
>
> Sergeant Christopher A. Kraft testified that when he arrived at the scene of the crime he observed two men on the street. One was Peterson, who was sitting on the curb in a bloody white T-shirt. The other was an unidentified witness who simply told Sergeant Kraft: "I think this man's been shot." Sergeant Kraft also observed a rifle, a tan or orange shoe, a dirty sock, and a black hooded sweatshirt. The gun recovered from the scene was later identified as a modified rifle, in that the stock on the rear of the weapon and the barrel had both been cut shorter. The orange shoe appeared to have been chewed on.

>        Officer Wesam Yaghnam testified that he was one of the police officers on the scene looking for the gunman. While canvassing the area, he heard a chain-link fence move, and used his flashlight to find Crenshaw hiding in some brush. Officer Yaghnam instructed Crenshaw to come out, but Crenshaw refused. Officer Yaghnam and another officer then approached Crenshaw. Officer Yaghnam observed that Crenshaw had a dog leash wrapped around his leg and foot, that the leash was caught on the top of the chain-link fence, and that Crenshaw had a puncture wound on his bare foot. Officer Yaghnam also noticed that Crenshaw was missing a shoe and sock on his right foot, but that he was wearing a sock and a "yellow and red or orange" shoe on his left foot. The officer cut the leash to release Crenshaw from the chain-link fence and took him into custody. Crenshaw was taken to the hospital.

Answer Ex. 5 at 2–3.

Crenshaw was charged with four counts: (1) first-degree reckless injury by use of a dangerous weapon; (2) attempted armed robbery by use of force; (3) felon in possession of a firearm; and (4) possession of a short-barreled rifle. The jury found Crenshaw guilty on counts one, three, and four, and not guilty on count two. The trial court sentenced him to thirty-five years in state custody.

## II. DISCUSSION

Crenshaw raises three claims in his petition: (1) that he received ineffective assistance of trial counsel; (2) that his convictions for both possession of a short-barreled rifle and the use-of-a-dangerous-weapon penalty enhancer violates double jeopardy; and (3) that he was deprived of due process when the state court rejected his postconviction request to have the rifle tested for DNA evidence.

### A.     Ineffective Assistance of Counsel

To establish a claim for ineffective assistance of trial counsel, a petitioner must show that his lawyer performed deficiently and that he suffered prejudice as a result.

2

Strickland v. Washington, 466 U.S. 668, 687-94 (1984). To establish deficient performance, a petitioner must demonstrate that his lawyer's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. Id. at 687. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. To establish prejudice, a petitioner must show that there is a reasonable probability that but for his lawyer's deficient performance, the result of the proceeding would have been different. Id. at 694.

Crenshaw argues that his trial counsel was ineffective in two respects. First, he argues that counsel was ineffective in failing to adequately develop Crenshaw's preferred defense theory, which was that Peterson was the one who attempted to rob Crenshaw, and that Crenshaw shot Peterson in self-defense. Second, he argues that trial counsel was ineffective in failing to object to the form of the jury verdict. The Wisconsin Court of Appeals adjudicated Crenshaw's ineffective-assistance claims on the merits, and therefore I may grant relief only if the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d).[1]

---

[1] Under § 2254(d), I may also grant relief if the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. However, in the present case, there is no plausible claim that the state court's decision was based on an unreasonable determination of the facts.

### 1. Failure to develop self-defense theory

During Crenshaw's direct appeal, the Wisconsin Court of Appeals described the background to Crenshaw's first ineffective-assistance claim as follows:

> During her opening statement at trial, Crenshaw's counsel told the jury that, on the day of the attack, Peterson was walking down the street with the rifle and the puppies and he attempted to rob Crenshaw. However, later in the trial, Crenshaw waived his right to testify, and, therefore, did not explain to the jury his version of events. Crenshaw told the trial court that he understood the legal rights he was waiving by not testifying, that no one had threatened him or promised him anything for not testifying, and that the decision not to testify was his own, made after conferring with his trial counsel. Crenshaw was then given an additional opportunity to speak with his counsel, which he did, before ultimately signing a form entitled "Waiver of Right to Testify."
>
> Before closing arguments, the State moved to bar Crenshaw from arguing to the jury during closing that Peterson was the aggressor. The trial court upheld the motion, stating:
>
>> I agree with the State . . . . Now, I think that certainly it's fair to obviously argue inferences and what might be some reasonable hypotheticals, but at least as far as facts and evidence[,] I was reviewing my notes again and certainly my best memory, there [are] no facts in evidence that would support in my view an argument by the defense to the jury specifically that Mr. Peterson was involved in any attempted robbery of the defendant.
>
> Consequently, in her closing argument, Crenshaw's counsel chose to attack the credibility of the State's witnesses and the lack of evidence pointing to Crenshaw as the aggressor.

Answer Ex. 5 at 4.

The court rejected Crenshaw's claim that counsel was ineffective in failing to properly develop the self-defense theory, reasoning as follows:

> Several of Crenshaw's ineffective-assistance-of-counsel claims center around the idea that his trial counsel failed to raise a defense that Crenshaw believes should have been raised, to wit, that Peterson and another individual attacked and robbed Crenshaw and that Crenshaw was acting in

4

self-defense. Specifically, Crenshaw contends that his trial counsel was ineffective in this regard for failing to: (1) obtain and present medical records setting forth Crenshaw's head injuries, which he argues supports his theory that he was attacked by two men; (2) argue that Crenshaw's bicycle was never recovered at the scene of the crime, which he argues supports his theory that he was robbed; (3) present sufficient evidence throughout the trial to argue that Peterson was the aggressor during closing arguments; and (4) request the necessity and privilege jury instructions. We disagree.

First, Crenshaw waived his right to testify at trial. Crenshaw submits that he "was unaware that his failure to testify would result [sic] his theory being nullified." However, Crenshaw does not claim that he would have testified had he known that he could not otherwise raise his theory that Peterson was the aggressor, nor could he logically make that argument. Crenshaw waived his right to testify at the end of the defense's case. It should have been obvious to Crenshaw at that point in the trial that if he did not testify, the jury would not hear anymore about his version of events than had already been presented.

Furthermore, if this is Crenshaw's attempt to argue that he did not knowingly, intelligently, and voluntarily waive his right to testify, not only is his argument conclusory, it is not supported by the record. Our review of the record revealed that the trial court conducted the standard colloquy with Crenshaw to assure that he was knowingly, intelligently, and voluntarily waiving his rights. Following the colloquy, and after conferring with his counsel, Crenshaw expressly waived his right to testify. Crenshaw also signed a form entitled "Waiver of Right to Testify," stating that he "knowingly, understandingly, intelligently and voluntarily waived his right to testify in the above matter" and that "the decision not to testify has been arrived at independently . . . after consulting with and advising counsel . . . of said decision."

Without Crenshaw's testimony, his trial counsel was limited in her ability to raise a theory of self-defense. The evidence that Crenshaw argues his trial counsel should have admitted in support of the defense—namely, Crenshaw's medical records detailing a head hematoma he sustained the day of the attack and evidence that the bicycle he was allegedly riding was not recovered at the scene—without more, is hardly enough to permit an inference that Peterson was the aggressor. The medical records, without Crenshaw's explanation, merely demonstrate that Crenshaw suffered a head injury, which is consistent with the State's theory that Crenshaw and Peterson struggled. And there was conflicting testimony at trial regarding whether Crenshaw was riding a bicycle or was on foot at the time of the shooting. In other words, a missing bicycle alone, when there was no definitive evidence that Crenshaw was even riding a bicycle, hardly supports

5

Crenshaw's theory that Peterson attacked and robbed him. Those two pieces of evidence alone do not undermine our confidence in the outcome at trial, much less support Crenshaw's theory on appeal that Peterson was the aggressor. Consequently, Crenshaw's trial counsel was not ineffective for failing to introduce the evidence.

Second, Crenshaw's trial counsel was not ineffective for failing to introduce sufficient evidence throughout the trial to argue during closing argument that Peterson was the aggressor. When Crenshaw chose not to testify, he gave up his ability to tell the jury, in his own words, what he claims happened on the day of the attack, and, as set forth above, other than the medical records and allegedly missing bicycle, he does not specify any other evidence that his trial counsel could have submitted to support Crenshaw's story that Peterson attacked him. Without such evidence, his argument that his trial counsel acted deficiently is conclusory. Conclusory arguments are not enough on which to determine that trial counsel was ineffective.

Nor was trial counsel ineffective for failing to request the necessity and privilege jury instructions. Because there was not sufficient evidence submitted at trial to support the theory that Peterson attacked Crenshaw, there was no basis for the jury to find in Crenshaw's favor on those instructions even if they had been given. Consequently, Crenshaw was not prejudiced by the failure to instruct the jury on necessity and privilege.

Trial counsel and the defendant have the discretion to choose the theory of the defense. Here, the record shows that trial counsel chose to attack the credibility of the State's witnesses after Crenshaw chose not to testify and Crenshaw does not argue that counsel did not discuss this strategy with him. Because Crenshaw has not demonstrated that his self-defense theory was viable given his choice not to testify and the evidence in the record, we cannot say that trial counsel's strategy was not rationally "founded on the facts and the law." See id. at 502, 329 N.W.2d 161. Therefore, we conclude that trial counsel was not ineffective for failing to raise self-defense at trial.

Answer Ex. 5 at 6–12 (citations and footnotes omitted).

Nothing in the passage above could be said to be contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the Untied States. However, following his direct appeal, Crenshaw filed a postconviction motion in the state trial court in which he attempted to challenge one of the premises in the

court of appeals' disposition of this claim. In that motion, he argued that he would have testified at trial had he known that he could not otherwise raise his theory that Peterson was the aggressor. Crenshaw stated that trial counsel had advised him that she could argue self-defense even if he chose not to testify. He also submitted an affidavit in which he indicates that, had he not waived his right to testify, he would have testified as follows:

> Mr. Peterson and someone else attempted to rob me. I was riding my bike when I heard someone call my name. I turned around to see who was calling me, but I didn't know who the individuals were, so I slowly proceeded on. Afterwards, I got hit with something on my head, and at the time I didn't know what it was. I fell off the bike, and that's when I seen the gun and I began to wrestle for the gun from Mr. Peterson while another person also attacked me while I was wrestling for the gun from Peterson. At the same time I could see that there were dogs by me that were barking, in which one of the dogs bit me. I managed to get away from the attackers, and I ran to hide, in which the police later found me.

Answer Ex. 9 at 2. Crenshaw argued that trial counsel's advising him that he could decline to testify and still present his self-defense theory constituted ineffective assistance.

The trial court rejected Crenshaw's renewed claim of ineffective assistance. The trial court assumed that the facts as alleged by Crenshaw were true—i.e., that trial counsel had advised Crenshaw that she could argue self-defense even if he did not testify, and that had Crenshaw not waived his right to testify he would have testified as stated in his affidavit. The trial court also assumed that trial counsel's advice constituted deficient performance. However, the trial court rejected Crenshaw's claim on the ground that Crenshaw could not have been prejudiced by trial counsel's advice. The court found that, had Crenshaw testified, there would have been no reasonable probability of a different outcome because the jury would not have believed his claim that he had acted in self-defense. The court pointed out that had Crenshaw testified, the jury would have learned

7

that he had six prior convictions. The court also noted that Crenshaw's testimony would have been impeached by prior inconsistent statements he made to the police.[2] The court also noted that no evidence outside of his own testimony corroborated his version of events. Finally, the court found that Crenshaw's self-defense theory was inherently incredible, as it required the jury to believe that Peterson, a 50-year-old man, was out walking two puppies while carrying a rifle when he and another person decided to rob a person who happened to be passing by on a bicycle. Id. at 3–4.

Crenshaw appealed the trial court's decision. The Wisconsin Court of Appeals affirmed the decision on the ground that Crenshaw's argument was merely a rephrasing or repackaging of arguments he had made on direct appeal. See Answer Ex. 13.

The arguments raised in Crenshaw's postconviction motion do not support federal habeas relief. As the state trial court found, even if trial counsel performed deficiently in advising Crenshaw that she could argue self defense without his testimony, there is no reasonable probability that the jury would have accepted the self-defense theory after hearing Crenshaw testify. Therefore, Crenshaw is not entitled to relief on this claim.

### 2. Failure to object to jury instruction

Crenshaw argues that trial counsel performed deficiently when she failed to object to the form of the jury verdict. The verdict asked the jurors to answer the following question if they found Crenshaw guilty of first-degree reckless injury: "Did the defendant, as party to a crime, commit the crime of First Degree Reckless Injury while possessing a dangerous weapon?" Answer Ex. 5 at 13. During Crenshaw's direct appeal, the parties agreed that

---

[2]These prior inconsistent statements have not been made part of the federal habeas record.

8

the emphasized phrase should not have been included in the verdict, as there was no claim at trial that Crenshaw was a party to the crime rather than the person who directly committed it. However, the court of appeals concluded that trial counsel was not ineffective in failing to call attention to this error because Crenshaw was not prejudiced by the error. It reasoned as follows:

> When the trial court read the jury verdict form to the jury prior to the jury's deliberations, the court properly instructed the jury, omitting the "as party to a crime" language. While Crenshaw correctly states that the verdict form itself included the incorrect language, the jury found Crenshaw guilty of first-degree reckless injury prior to reading the jury verdict form question about possessing a dangerous weapon as party to a crime. And the jury's later findings that Crenshaw was guilty of possession of a firearm by a felon and guilty of possession of a short-barreled rifle are consistent with its conclusion that Crenshaw committed the reckless injury charge while possessing a dangerous weapon. Because the error on the jury verdict form does not give rise to a reasonable probability sufficient to undermine confidence in Crenshaw's conviction, we conclude that his trial counsel was not ineffective for failing to object.

Answer Ex. 5 at 13–14. The court of appeals's reasoning was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

**B.     Double Jeopardy**

The petitioner claims that his double-jeopardy rights were violated when he was punished for possessing a short-barreled rifle and separately punished for committing the penalty enhancer of using a dangerous weapon during the commission of a crime. The Wisconsin Court of Appeals adjudicated this claim on the merits, and therefore I may grant relief only if the court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d).

9

With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. Missouri v. Hunter, 459 U.S. 359, 366 (1983). In the absence of contrary legislative intent, a court will conclude that a legislature did not intend to impose multiple punishments for the "same offense." Id.; Whalen v. United States, 445 U.S. 684, 691–92 (1980). In contrast, multiple punishments "can presumptively be assessed after conviction for two offenses that are not the 'same.'" Hunter, 459 U.S. at 678–79. In determining whether two statutes proscribe the same offense, a court applies the test from Blockburger v. United States: "whether each [statutory] provision requires proof of a fact which the other does not." Whalen, 455 U.S. at 691–92.

In the present case, the offense of possession of a short-barreled rifle and the penalty enhancer for use of a dangerous weapon each require proof of a fact which the other does not. Possession of a short-barreled rifle requires the state to prove (1) that the defendant possessed a rifle, and (2) that the rifle was short-barreled, i.e., that it had "one or more barrels having a length of less than 16 inches measured from closed breech or bolt face to muzzle" or that the rifle had "an overall length of less than 26 inches." Wis. Stat. § 941.28; Wis. JI—Criminal 1342 (2008). The use-of-a-dangerous-weapon penalty enhancer requires the state to prove that the defendant committed the underlying crime (here, first-degree reckless injury) while using, threatening to use, or possessing to facilitate the crime, a dangerous weapon. Wis. Stat. § 939.63; State v. Peete, 185 Wis. 2d 4, 16–19 (1994); Wis. JI—Criminal 990 (2008).

10

To establish guilt of the penalty enhancer, the state does not need to prove that the dangerous weapon was a short-barreled rifle. Rather, it can prove guilt simply by proving, for example, that the defendant used any rifle to commit the crime, regardless of length. If the state wishes to prove guilt of the separate offense of possession of a short-barreled rifle, however, it must introduce evidence concerning an additional fact—namely, evidence concerning the length of the rifle. Thus, the offense of possession of a short-barreled rifle requires proof of a fact (the length of the rifle) that the penalty enhancer does not. Similarly, to establish guilt of possession of a short-barreled rifle, the state does not need to prove that the rifle was used or possessed in connection with the commission of some other crime. Thus, the penalty enhancer requires proof of a fact (use of the dangerous weapon to commit some other crime) that the offense of possession of a short-barreled rifle does not. It follows that possession of a short-barreled weapon and the penalty enhancer for use of a dangerous weapon do not punish the same offense. I therefore presume that the Wisconsin legislature intended to allow a sentencing court to separately punish both possession of a short-barreled rifle and use of a dangerous weapon to commit a crime. As there is no evidence of contrary legislative intent which might rebut the presumption, I conclude that Crenshaw could, consistently with double-jeopardy principles, be punished for both possessing a short-barreled rifle and committing the crime of first-degree reckless injury while using a dangerous weapon.

C.  **Postconviction Discovery of DNA Evidence**

Crenshaw's remaining claim is that he was deprived of due process when the state court denied his motion for postconviction discovery of DNA evidence. See Wis. Stat. § 974.07. In that motion, Crenshaw sought either access to cotton swabs that the police

had used on the gun so that he could collect DNA evidence or, if the swabs had already been tested, the results of the tests. The reason Crenshaw sought DNA evidence is because he thought it might indicate that a third person was at the scene of the crime, corroborating Crenshaw's theory that Peterson and another individual had attacked him. The state trial court denied the motion on the ground that even if the cotton swabs revealed the DNA of a third person, such evidence would not give rise to a reasonable probability that, had the evidence been presented at trial, the outcome of the trial would have been different.

Although Crenshaw frames this claim as a deprivation of due process, he has not identified any federal law providing for a right of access to DNA evidence in the postconviction setting. Moreover, I can find no federal law that might support his claim. The Supreme Court has held that a convicted person does not have a right of access to DNA evidence as a matter of substantive due process. See District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 72–74 (2009). Although the Supreme Court has indicated that a convicted person might have a right of access to such evidence as a matter of procedural due process, see id. at 67–72; Skinner v. Switzer, __ U.S. __, 131 S. Ct. 1289, 1293 (2011), that right would be implicated only if the state's existing procedures governing postconviction access to DNA evidence were shown to be inadequate in some respect, Osborne, 557 U.S. at 71. In the present case, Crenshaw does not claim that Wisconsin's existing procedures for obtaining postconviction access to DNA evidence are inadequate as a matter of federal due process. Nor did he fairly present any such claim to the state courts. See Lewis v. Sternes, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (habeas petitioner procedurally defaults federal claim by not fairly

presenting it to state courts). Rather, he alleges that the state courts failed to properly apply Wisconsin's existing procedures to the facts of his case. However, errors of state law are not cognizable on federal habeas review. Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004).

To the extent that Crenshaw means to argue that the state court's misapplication of state law resulted in a denial of federal procedural due process, I can find no federal cases that would support such an argument. And as a matter of first impression, I could not hold that the state court's ruling somehow deprived Crenshaw of procedural due process. The state courts determined that Crenshaw was not entitled to test the cotton swabs for DNA because the presence of a third person's DNA on the gun would not have helped Crenshaw. This determination was clearly correct: even if a third person's DNA was found on the gun, it would not give rise to an inference that some third person was present at the scene and helped Peterson attack Crenshaw, since the DNA could have gotten on the gun at some point prior to when the crime occurred.

For the above reasons, Crenshaw is not entitled to habeas relief on his claim involving access to DNA evidence.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2014.

                    s/ Lynn Adelman
                    _____
                    LYNN ADELMAN
                    District Judge